
FILED
2010 Sep-27 AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DOUGLAS HERMAN DANIEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 09-G-1769-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Douglas Herman Daniel, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

 (1) whether the claimant is currently employed;

 (2) whether he has a severe impairment;

 (3) whether his impairment meets or equals one listed by the Secretary;

 (4) whether the claimant can perform his past work; and

> (5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Patrick R. Digby determined the plaintiff met the first two tests, but concluded that while the plaintiff's "seizure disorder, diabetes, obesity, history of right knee surgery, gastroesophageal reflux disease (GERD), history of pancreatitis, depression/bipolar disorder, borderline intellectual functioning, and history of attention deficit hyperactivity disorder (ADHD)" are "severe," he did not have an impairment or combination of impairments that meet or medically equal a listed impairment. [R. 11-12]. However, while he found that the plaintiff had borderline intellectual functioning, he also found that "the record clearly supports finding that the claimant's intellectual functioning is within the mentally retarded range." [R. 12-13]. The ALJ found the plaintiff unable to perform his past relevant work, but that he could perform a less than full range of medium work. [R. 15, 19].

## DISCUSSION

The plaintiff claims disability under Listing 12.05C. Listing 12.05C requires that the claimant have "A valid verbal, performance, or full-scale I.Q. of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993)(quoting Listing 12.05C). When considering whether the plaintiff has a physical or mental impairment imposing significant work-related limitation of function in addition to a low verbal scale I.Q., the Commissioner must consider the plaintiff's impairments in combination. Davis 985 F.2d at 533. The issue of what constitutes "a physical or other mental impairment imposing additional and significant work-related limitation of function" was addressed in Edwards by Edwards v. Heckler:

> An impairment imposes significant limitations when its effect on a claimant's ability to perform "basic work activities" is more than slight or minimal. The question under Listing 12.05C, however, is not whether the impairment is in and of itself disabling, thus, "significant" requires something less than severe within the meaning of § 404.1520(c) [of the Commissioner's Regulations].

755 F.2d 1513, 1515 (11th Cir. 1985)(considering whether the presence of chronic obstructive lung disease and exercise induced asthma provided a sufficient additional impairment to meet the second prong of Listing 12.05C.). The second part of the Listing, therefore, imposes a less stringent requirement than that imposed by 20 C.F.R. § 404.1520(c). Section 404.1520 sets forth the five-step sequential process by which a claimant's disability is evaluated. Section 404.1520(c) defines "severe impairment" to

require that the impairment or combination of impairments significantly limit the claimant's physical or mental ability to do basic work activities.

In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C. Listing 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.") The introductory paragraph to Listing 12.05C is as follows:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

Therefore, a claimant must have manifested "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22 in order to meet Listing 12.05C. In this circuit, it is presumed that a person's I.Q. remains fairly constant throughout his life and a valid I.Q. test meeting the Listing criteria creates a rebuttable presumption that the condition manifested itself before age twenty-two. Hodges v. Barnhart, 276 F.3d 1265, 1268-69 (11th Cir. 2001). The Hodges court recognized that although this circuit had not formally recognized this presumption, it had been implicitly recognized in Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992), that when a claimant presents a valid I.Q. score meeting the Listing criteria, he is presumptively

disabled under the Listing if the other requirements of the Listing have been met.

Hodges, 276 F.3d at 1269.

On August 21, 2008, at the behest of his attorney, the plaintiff was examined by Christine B. Lloyd, Ph.D., a clinical neuropsychologist.  Dr. Lloyd stated that the plaintiff:

> underwent a neuropsychological test battery consisting of the Test of Memory Malingering (TOMM); Wide Range Achievement Test-Forth [sic] Edition (WRAT-IV); and Wechsler Adult Intelligence Scale-Third Edition (WAIS-III); Beck Depression Inventory-Second Edition (BDI-II); and Beck Anxiety Inventory (BAI).

[R. 657].  On the WAIS-III, and the plaintiff's scores were as follows:

| Verbal | Performance | Full Scale |
|--------|-------------|------------|
| 69     | 76          | 70         |

[R. 661].  She opined that his "assessed levels of general cognitive functioning are considered to be generally valid and reliable."  [R. 662].  Under the WRAT-II, the plaintiff's:

> academic performance was within the Extremely Low Range in all areas. His reading, spelling, and arithmetic skills fall at the 2nd grade level.  Test results are indicative of a generalized academic deficit, which is consistent with the educational history.

[Id.].  As for his results on the TOMM, Dr. Lloyd stated "there are no indications of exaggeration or less than normal effort in performance on tests of cognitive functioning." [R. 663].  Dr. Lloyd opined that the plaintiff's performance on the BAI and the BDI-II indicated he was within the Severely Abnormal Range for anxiety and depression.  [Id.].

Dr. Lloyd determined that the "test date reveal that Mr. Daniel possesses a Borderline to Mildly Mentally Retarded level of intelligence." [R. 664].

The ALJ gave "little weight to Dr. Lloyd's opinion suggesting the claimant has a disabling level of mental dysfunction." [R. 12]. However, he then states that "Dr. Lloyd indicated at least twice in her report that there was no indication of any cognitive decline over premorbid levels . . . ."[1] [R. 12]. The ALJ continued:

> That is consistent with the claimant's school records showing (as also noted by Dr. Lloyd) that the claimant repeated the 1st grade, was treated with Ritalin for ADHD, was in special education since an early age, and failed all portions of the high school exit examination. The undersigned also notes that the school records show Otis-Lennon School Ability Index scores (considered comparable to IQ scores) of 73 in 1985 at age 15 and of 66 in 1987 at age 17 (Exhibit 2E). The record clearly supports finding that the claimant's intellectual functioning is within the mentally retarded range.

[R. 12-13]. The ALJ's reasons for giving Dr. Lloyd's opinion little weight are inconsistent at best, and at odds with his own findings. Because Dr. Lloyd is a specialist in the field of neuropsychology, her opinion is entitled to more weight in this area.[2] The thoroughness of her report and supporting testing also entitles it to greater weight.[3]

The ALJ determined that the plaintiff did not meet the Listing for 12.05C:

---

[1] "Premorbid" refers to the time period prior to the plaintiff's closed head injuries, which he suffered on May 13, 2003, when he injured the back of his head after falling on a concrete driveway, and March 25, 2005, when he injured his head in a roller skating accident.

[2] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

[3] See 20 C.F.R. § 404.1527(d)(3)(well supported opinions entitled to more weight).

> However, a finding that the claimant in fact is mentally retarded, for
> purposes of the listings, requires that in addition to low IQ score that there
> also be deficits in adaptive functioning since before age 22.  The American
> Psychiatric Association, Diagnostic and Statistical Manual of Mental
> Disorders:  DSM-IV 41 (4th ed., text revision 2000) states that there must be
> significant limitations in adaptive functioning in at least two of the
> following skill areas:  communication, self-care, home living,
> social/interpersonal skills, use of community resources, self-direction,
> functional academic skills, work, leisure, health, and safety.

[R. 13].  The ALJ stated, "although there is evidence of deficits in functional academic skills, at best we just have reports that the claimant's wife handles most family matters." [Id.].  The record shows that the plaintiff was in special education classes at school at least as early as the fourth grade.  [R. 126].  Standardized testing taken in the fifth grade placed him the third percentile for reading and spelling, and the second percentile for mathematics.  [R. 127].  The plaintiff failed the Alabama Basic Competency Testing Program.  [R. 128].  Clearly, these records show that the plaintiff had deficits in adaptive functioning in functional academic skills before he reached age 22.

As for the area of communication, the ALJ stated:

> Although the claimant reported in February 2007 that he had a hard time
> reading and read very little and needed help understanding [what] he was
> told (Exhibit 14E), he did not have difficulty testifying at the hearing, which
> lasted over an hour.  H reported he could read/write more than his name
> (Exhibit 1E).  He appeared to understand all questions when interviewed by
> the Social Security Administration in September 2006 (exhibit 3E).  He
> reads truck books/magazines/newspapers two to three hours a day and
> remember most of the time, reports no difficulty following instructions if
> they are kept simple . . . .

[R. 13].  However, the record shows that when the plaintiff was in second grade, at nine years old, standardized testing placed him in the seventh percentile for reading.  [R. 127].

In the fourth grade, at age 11, standardized test results placed him in the ninth percentile for reading, and the third percentile for spelling. [Id.]. In the fifth grade, at age 12, his scores indicated he was in the third percentile for both reading and spelling. [Id.]. When the plaintiff took the Stanford Achievement Test in the eighth grade, his scores placed him in the fourth percentile for reading, second percentile for listening, and the sixth percentile for language. [Id.]. The plaintiff failed the Alabama Basic Competency Test for reading once and for language twice. [R. 130]. In the tenth grade, at age 17, the plaintiff placed in the tenth percentile for reading and the fourth percentile for language on the Stanford Achievement Test. [Id.]. Without question, these records show that the plaintiff had deficits[4] in adaptive functioning in communication before he reached age 22. Moreover, the WRAT-IV test given by Dr. Lloyd in August 2008 demonstrates that the plaintiff continues to have deficits in communication, with test scores well below the first percentile. [R. 662].

      As stated above, the ALJ found that the plaintiff suffers from the severe impairments of "seizure disorder, diabetes, obesity, history of right knee surgery, gastroesophageal reflux disease (GERD), history of pancreatitis, depression/bipolar disorder, borderline intellectual functioning, and history of attention deficit hyperactivity disorder (ADHD). . . ." [R. 12]. The ALJ also found that these "impairments result in

---

[4] The plaintiff also testified that he failed his driver's license examination numerous times, and that he finally was allowed a non-written test in which the examiner asked multiple choice questions while hinting at the correct answers. [R. 39].

9

more than minimal functional limitations." [Id.].   Thus the plaintiff meets or medically equals Listing 12.05C.

## CONCLUSION

Therefore, the plaintiff is disabled within the meaning of the Social Security Act.  An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 27 September 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.